1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
**For the Northern District of California**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DENNIS L. HAMILTON,

        Petitioner,

     v.

F. GONZALEZ, warden,

        Respondent.

_____/

No. C 09-1494 SI (pr)

**ORDER OF DISMISSAL**

**INTRODUCTION**

     Dennis L. Hamilton, a <u>pro se</u> prisoner, has filed a petition for writ of habeas corpus challenging a 1997 conviction for kidnapping and assault. Now before the court for consideration are respondent's motion to dismiss the petition as untimely, petitioner's motion for an evidentiary hearing and petitioner's motion for appointment of counsel. For the reasons discussed below, the court finds the petition to be barred by the statute of limitations and dismisses it.

**BACKGROUND**

     On July 7, 1997, Hamilton entered a no contest plea in San Mateo County Superior Court to one count of kidnapping to commit robbery and one count of assault with a deadly weapon or with force likely to produce great bodily injury. <u>See</u> Cal. Penal Code §§ 209(b), 245(a)(1). On August 22, 1997, he was sentenced to life imprisonment. Hamilton did not appeal, and did not apply for a certificate of probable cause to appeal.

     Hamilton filed several state habeas petitions before he filed this action. On July 31, 1997,

he filed a petition for writ of habeas corpus in the California Supreme Court.  That petition was denied on August 26, 1998.[1]

Almost a decade passed before Hamilton resumed his efforts to challenge his conviction. He filed a habeas petition in the San Mateo County Superior Court on April 27, 2007, which was denied on June 18, 2007.  He filed another habeas petition in the San Mateo County Superior Court on September 6, 2007, which was denied on September 28, 2007.  He then filed his second habeas petition in the California Supreme Court on September 11, 2007, which was denied on March 19, 2008.  Hamilton filed his third habeas petition in the California Supreme Court on January 7, 2008, which was denied on July 23, 2008.  The denial of the petition cited In Re Robbins, 18 Cal. 4th 770, 780 (1998), which means that the petition was rejected for an unexplained delay.  Hamilton filed a fourth habeas petition in the California Supreme Court on July 23, 2008, which was denied on January 14, 2009.  His fifth petition in the California Supreme Court was filed on September 4, 2008, and denied on October 1, 2008.  Hamilton filed a habeas petition in the California Court of Appeal on May 6, 2009, which was denied on May 7, 2009.  He then filed his sixth petition in the California Supreme Court on May 20, 2009.  That petition was still pending when respondent moved to dismiss.

Hamilton filed this action on or about March 26, 2009.  The signature on the federal petition is dated March 26, 2009, and the petition was stamped "filed" on April 6, 2009 at this court.  Because Hamilton is a prisoner proceeding pro se, he receives the benefit of the prisoner mailbox rule, which deems most documents filed when they are given to prison officials to mail to the court.  See Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003).  His federal habeas petition is deemed filed as of March 26, 2009, the date he apparently put it in the mail to be sent to the court.

---

[1]Hamilton also apparently filed a habeas petition in 1998 in the San Mateo County Superior Court because a later order from that court refers to a February 9, 1998 denial of a habeas petition.  See Petition, attachment 1, p. 4.  The date on which that petition was filed does matter because the limitations period either had not started or was then being tolled because of the pendency of the first petition in the California Supreme Court.

United States District Court

For the Northern District of California

**DISCUSSION**

A.      <u>The Petition Is Untimely</u>

        Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which:  (1) the judgment became final after the conclusion of direct review or the time has passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1).  The one-year limitations period will be tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).

        Here, the limitations period started upon "the expiration of the time for seeking [direct] review," because Hamilton did not appeal.  28 U.S.C. § 2244(d)(1)(A.  The time for Hamilton to seek direct review concluded on October 22, 1997, and his conviction became final that day.  <u>See</u> Cal. Rule of Court 8.308(a) (providing that appeal from criminal judgment must be filed within sixty days after rendition of judgment or making of order being appealed) (formerly Cal. Rule of Court 30.1).  The one-year limitations period would have started the next day but for the fact that Hamilton already had filed a petition for writ of habeas corpus in state court.  The limitations period was thus immediately tolled and did not resume until thirty days after his first state habeas petition was denied by the California Supreme Court on August 26, 1998.  <u>See</u> 28 U.S.C. 2244(d)(2); <u>see also</u> <u>Allen v. Lewis</u>, 295 F.3d 1046 (9th Cir. 2002) (denial of habeas petition became final 30 days after filing under former California Rule of Court).  As a result, Hamilton's one-year period began on September 25, 1998 (i.e., 30 days after denial of his first habeas petition in the California Supreme Court) and the presumptive deadline to get to federal court was September 25, 1999.  Unless Hamilton is entitled to other statutory tolling or equitable

3

1   tolling, his petition is untimely because he missed that deadline by many years.

2        Hamilton filed numerous additional state habeas petitions in 2007 and later, but there was

3   such a large gap between the denial of the habeas petition in 1998 and the resumption of state

4   habeas activity in 2007 that the 2007-2009 habeas efforts did not statutorily toll the limitations

5   period.  The limitations period that expired in September 1999 was not revived when he returned

6   to state court for further habeas efforts starting in April 2007.  His petition is timely only if there

7   is a reason to equitably toll the limitations period for a sufficient amount of time to push back

8   the deadline by several years.

9        The one-year limitations period can be equitably tolled because § 2244(d) is a statute of

10  limitations and not a jurisdictional bar.  Calderon v. United States District Court (Beeler), 128

11  F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other grounds by Calderon v. United States

12  District Court (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc).  Two standards have been

13  articulated for determining whether equitable tolling is appropriate.  The standard that has long

14  been used in the Ninth Circuit is that equitable tolling will not be available in most cases because

15  extensions of time should be granted only if "extraordinary circumstances beyond a prisoner's

16  control make it impossible to file a petition on time."  Beeler, 128 F.3d at 1288 (citation and

17  internal quotation marks omitted).  The Supreme Court articulated the standard differently, and

18  stated that "a litigant seeking equitable tolling bears the burden of establishing two elements:

19  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

20  stood in his way.”  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (petitioner's lack of diligence

21  in filing timely state and federal petitions precluded equitable tolling); Raspberry v. Garcia, 448

22  F.3d 1150, 1153 (9th Cir. 2006) (quoting Pace).  The Ninth Circuit has not settled on a single

23  consistent standard.  See Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir.), cert. denied, 129 S.

24  Ct. 397 (2008) (declining to decide whether Pace standard differs from Beeler standard).

25       Under either articulation of the test, the petitioner bears the burden of showing that

26  equitable tolling is warranted in his case.  See Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir.

27  2002); Pace, 544 U.S. at 418.  The petitioner also must show that the extraordinary

28

United States District Court
For the Northern District of California

4

circumstances "were the cause of his untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003). Spitsyn's mention of causation is important because it shows that equitable tolling often is not susceptible to a simple yes/no kind of inquiry, but instead requires the court to determine whether equitable tolling is allowed for the circumstance and, if so, how much time should be tolled for the circumstance. An acceptable reason for some delay doesn't necessarily mean that all delay is excused under the equitable tolling doctrine.

Hamilton urges that his delay should be excused for several reasons. First, he contends that he did not know what to do after his notice of appeal was rejected as untimely by the state court. Petition, p. 15(1). A pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling. Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006); cf. Hughes v. Idaho State Bd. of Corrections, 800 F.2d 905, 909 (9th Cir. 1986) (illiteracy of pro se petitioner not sufficient cause to avoid procedural bar). Ignorance of the deadline and ignorance of the existence of avenues of collateral relief is not an extraordinary circumstance beyond a prisoner's control. See Felder v. Johnson, 204 F.3d 168, 172-73 & n.10 (5th Cir. 2000) (mere ignorance of the law or lack of knowledge of filing deadlines does not justify equitable tolling of AEDPA's limitations period) (citing cases). Hamilton is not entitled to equitable tolling on this ground.

Next, Hamilton contends that his delay should be excused because he was diligent, as shown by his failed attempts to obtain records and transcripts. Petition, p. 15(2). Even if a petitioner's efforts to obtain records could toll the limitations period – a matter the court does not decide – the limitations period cannot be equitably tolled here because the efforts did not occur until after the limitations period had expired.

Hamilton also contends that the Suspension Clause[2] requires that he be permitted to proceed because he was 16 years old when convicted. Petition, p. 15(4); see also traverse, pp. 17-19. The habeas statute of limitations does not violate the Suspension Clause of the U.S.

---

[2]Article I, § 9 of the U.S. Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."

5

1    Constitution because it is not jurisdictional and may be subject to equitable tolling.  See

2    Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003);  Green v. White, 223 F.3d 1001, 1004

3    (9th Cir. 2000).  The fact that he was 16 at the time of conviction also does not save him.

4    Hamilton has identified no case that stands for the proposition that minors are exempt from the

5    operation of the AEDPA.  That his youth did not prevent him from filing a petition is evidenced

6    by the fact that Hamilton *did* engage in some efforts to set aside his conviction back in 1997-

7    1998.  Even if a petitioner's status as a minor at the time of a conviction is a tolling event, it

8    would only toll the limitations period until the petitioner became an adult, with perhaps a one-

9    year grace period thereafter.  Cf. Patterson v. Stewart, 251 F.3d 1243, 1245 (9th Cir. 2001) (one-

10   year grace period for petitioners whose convictions became final before the statute of limitations

11   was enacted); Cal. Code Civ. Proc. § 352(a) (tolling under state law statutes of limitations until

12   age of majority).  Hamilton was 16 years old when convicted and was 28 years old when he filed

13   his federal petition. Any tolling would have ended when he reached the age of majority (or one

14   year thereafter) about nine (or eight) years before his federal petition was filed and would not

15   have tolled the limitations period for a long enough period of time to make his petition timely.

16        Hamilton also contends that he should be granted equitable tolling due to an unspecified

17   "mental disorder/mental retardation at the time of the default."  Traverse, p. 13.  He offers

18   absolutely no evidence in support of this contention other than the very generalized statements

19   that he "has always had trouble understanding and comprehending" and attended special

20   education class while in school.  Id.  Not only is the evidences on this point wholly lacking,

21   Hamilton fails to explain why he was unable to file his federal habeas petition in a timely

22   manner yet able to file ten habeas petitions in state courts in 1997-1998 and 2007-2009.

23        No equitable tolling is warranted in this case.  Hamilton's petition was untimely filed and

24   is barred by the habeas statute of limitations.

25   /   /   /

26   /   /   /

27

28

6

**United States District Court**
For the Northern District of California

B.      This Petitioner Does Not Pass Through The Actual Innocence Gateway

Hamilton contends that his untimely petition should be permitted because there otherwise would be a fundamental miscarriage of justice in that he is actually innocent.  Petition, p. 15(4).

To analyze this issue, it is necessary to consider the particulars of this case, which the court does mindful of the fact that it has only the limited information from the excerpts provided by Hamilton.

> Hamilton participated in a brutal kidnapping/robbery of a man trying to deliver a pizza. Defendant masterminded a plan whereby a pizza was ordered to go to a particular address, and he and his younger cohorts ambushed the victim.  After taking the victim's money, they gratuitously beat him, shoved him back into his own car, and defendant then drove the car out into a remote area on some levees, near the San Francisco Bay.  Here, defendant tried to coerce his partners in crime into killing the victim.  He went to far as to discuss the various ways this could be done. [¶] The victim in this case was savagely beaten.  He was kicked, punched, choked, and even had his face forced down into a mud puddle in such a way as to make him believe that they intended to drown him that way. Only after the gang of robbers stepped away to discuss the relative merits of different methods of homicide was he able to sneak away, in that it was very dark on the levees, with some nearby brush providing cover.  He hid while the defendant and the others looked for him. [¶] Defendant was eventually caught because he was bragging about his crime to a teenage girl he wished to impress.

Petition, Exh. D (People's Penal Code Section 1203.1 Statement), pp. 1-2; see Petition, Exh. B (preliminary hearing transcript).  This was the second pizza delivery man they had called; their first target was passed over because witnesses showed up when he arrived with a pizza.  See Petition, Exh. B, RT 20.  Hamilton confessed to the crime.  According to the prosecution, Hamilton's confession was in no way an apology and instead was "chilling in its lack of remorse."  Petition, Exh. D, p. 2.  Also according to the prosecution, Hamilton told the detective that they had taken the victim's wallet so that they could hunt him down and kill him if any of them were jailed.  Id. at 2-3.  The victim was unable to positively identify Hamilton at the preliminary examination because the perpetrators kept their identities concealed with the hoods of their jackets.  Petition, Exh. B, RT 14-15.  At sentencing, the judge took a very dim view of the defendant and his criminal activity.  After imposing the life sentence, the judge remarked: "I only hope that while you are incarcerated, you will continually think about this offense and understand the reason why you have been sentenced as you have.  Looking at you right now, looking you right in the eye, I don't think you understand and I don't think you care."

7

United States District Court
For the Northern District of California

1    <u>See</u> Petition, Exh. C (sentencing transcript), RT 12

2         A federal court may hear the merits of a successive, abusive or procedurally defaulted

3    claims if the failure to hear the claims would constitute a miscarriage of justice.  The Supreme

4    Court limits the "miscarriage of justice" exception to habeas petitioners who can show that "a

5    constitutional violation has probably resulted in the conviction of one who is actually innocent."

6    <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995) (citing <u>Murray v. Carrier</u>, 477 U.S. at 496).  Under this

7    exception, a petitioner may establish a procedural "gateway" permitting review of defaulted

8    claims if he demonstrates "actual innocence."  <u>Schlup</u>, 513 U.S. at 316 & n.32.  The actual

9    innocence gateway established in <u>Schlup</u> <i>may</i> be available to a petitioner whose petition is

10   otherwise barred by AEDPA's limitations period.  <u>See</u> <u>Majoy v. Roe</u>, 296 F.3d 770, 776-77 (9th

11   Cir. 2002).

12        "[I]f a petitioner . . . presents evidence of innocence so strong that a court cannot have

13   confidence in the outcome of the trial unless the court is also satisfied that the trial was free of

14   non-harmless constitutional error, the petitioner should be allowed to pass through the gateway

15   and argue the merits of his underlying claim."  <u>Schlup</u>, 513 U.S. at 316.  The required evidence

16   must create a colorable claim of actual innocence, that the petitioner is innocent of the charge

17   for which he is incarcerated, as opposed to legal innocence as a result of legal error.  <u>Id.</u> at 321.

18   It is not enough that the evidence show the existence of reasonable doubt, petitioner must show

19   "that it is more likely than not that no 'reasonable juror' would have convicted him." <u>Id.</u> at 329.[3]

20        Assuming <u>arguendo</u> that the actual innocence gateway is available to excuse a missed

21   deadline and assuming it is available to a petitioner whose conviction rests on a no-contest plea,

22   Hamilton has come nowhere near to making a credible showing of actual innocence.  He

23   indicates that the evidence against him was (1) his recorded confession to a police detective, (2)

24   statements by Shashina Lovelace that he boasted to her that he committed the crime, and (3)

25   _____

26       [3]The <u>Schlup</u> test does not work well with a petitioner who has pled guilty or no contest
     rather than gone to trial.  This court will assume arguendo that the actual innocence gateway
27   would be available to a petitioner who has pled no contest, but that is an open question.
     <u>See</u> <u>Smith v. Baldwin</u>, 510 F.3d 1127, 1140 n.9 (9th Cir. 2007) (en banc), <u>cert. denied</u>, 129 S.
28   Ct. 37 (2008).

fingerprint evidence.[4]  (There may be a mountain of other evidence, but Hamilton's entry of a no-contest plea eliminated the need for the prosecutor to lay out the entire case.)  Hamilton's "showing" of actual innocence is that (1) his confession should have been set aside as it was the product of a <u>Miranda</u> violation, (2) Shashina Lovelace's statement could have been set aside as hearsay,  Traverse, p. 7, and (3) the fingerprint evidence probably did not even exist.  Had all this evidence not been available to the prosecutor, Hamilton would have "had a fighting chance in a jury trial" if the court had bound him over for trial.  <u>Id.</u>  He presents no new evidence that suggests he did not commit the crime to which he pled no contest.  He wants this court to consider his guilt if certain evidence is set aside as inadmissible, but <u>Schlup</u> instructs that the "habeas court must make its determination concerning the petitioner's innocence 'in light of all the evidence including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial.'"  <u>Schlup</u>, 513 U.S. at 328 (citation omitted).  Even if making a new legal argument against the old evidence against him could meet the <u>Schlup</u> test, this petitioner's legal arguments don't pass muster.

Hamilton's argument for exclusion of his confession is weak at best.  He argues that the confession should have been suppressed because the detective who questioned him did not reiterate the <u>Miranda</u> warnings after a break in the interrogation.  The record shows the following sequence of events:  the detective read the <u>Miranda</u> warnings at the outset of the interview and Hamilton indicated he understood them; Hamilton signed a written <u>Miranda</u> advisement; Hamilton was questioned for about 40 minutes; the interview stopped for about 37 minutes; during that break, Hamilton heard the tape of Shashina Lovelace's statement to police about what he told her; and the detective resumed questioning after Hamilton was reminded that

---

[4]His co-defendants had confessed.  <u>See</u> Petition, Exh. A at 12, and Exh. B at 26-27 . Their confessions would have bolstered the case against him if they testified. He states that he has never seen the confessions and therefore was "unable to develop claims related to co-defendant's confessions and any other evidence that might be out there,"  Traverse, p. 4, but inexplicably contends that their confessions were the fruit of illegal interrogation tactics.  <u>Id.</u> at 6-7.

he had been read his <u>Miranda</u> rights earlier, although he was not given a new <u>Miranda</u> warning. <u>See</u> Petition, Exh. A, pp. 1, 15. He then confessed. It would have been at the very least an uphill battle to convince the court to suppress the confession as violative of <u>Miranda</u> under these facts. There is no <u>per se</u> rule as to when a suspect must be re-advised of his rights after the passage of time. <u>See</u> <u>United States v. Andaverde</u>, 64 F.3d 1305, 1312 (9th Cir 1995) (collecting cases; finding first and second interrogation sessions interrupted by 10 minutes to be an uninterrupted sequence of events). Here, the two interrogations were done by the same detective, were only separated by a 37-minute interruption, and followed by a reminder that he had been read his rights earlier. During that 37-minute interruption, the detective played a tape of Shashina Lovelace's interview which, according to the detective, "pretty much spells out everything that happened." Petition, Exh. A, p. 15. Hearing that tape led to a change of heart and Hamilton decided to tell the detective what had happened. <u>See</u> <u>id.</u> The <u>Miranda</u> argument was far from certain to succeed.[5]

Hamilton's contention that Shashina Lovelace's statement would have been excluded as inadmissible hearsay because it was an out-of-court statement is unpersuasive. There is no

_____

[5]The text discusses the <u>Miranda</u> issue in terms of the likelihood the confession would have been suppressed rather than in terms of whether counsel was ineffective in not making a motion to suppress the confession because this is a conviction upon a no-contest plea. Due to the fact that Hamilton entered a plea and did not go to trial, it cannot be said that counsel had forever lost the opportunity to try to have the confession suppressed.

Hamilton asserted in his federal petition that counsel was ineffective in not moving to suppress the confession. Because the court ordered briefing on the timeliness issue, it never discussed the merits of the claims for relief Hamilton raised in his federal habeas petition. His ineffective assistance of counsel claims would be barred by the rule that a pre-plea constitutional violation cannot be considered in a federal habeas action brought by a petitioner who pled guilty. <u>See</u> <u>Haring v. Prosise</u>, 462 U.S. 306, 319-20 (1983) (guilty plea forecloses consideration of pre-plea constitutional deprivations); <u>Moran v. Godinez</u>, 57 F.3d 690, 700 (9th Cir.), <u>cert. denied</u>, 516 U.S. 976 (1994) (refusing to consider contention that petitioner's attorneys were ineffective because they failed to attempt to prevent the use of his confession as pre-plea constitutional violation). The only challenges left open in federal habeas corpus after a guilty plea are the voluntary and intelligent character of the plea and the nature of the advice of counsel to plead. <u>Hill v. Lockhart</u>, 474 U.S. 52, 56-57 (1985). The <u>Miranda</u> issue would only be relevant as it affected counsel's advice to Hamilton to plead guilty; the determination of whether any  error prejudiced the defendant depends largely on whether the affirmative defense likely would have succeeded at trial. <u>See</u> <u>Hill</u>, 474 U.S. at 59.

<b>United States District Court</b>
For the Northern District of California

United States District Court
For the Northern District of California

reason to believe she would not have repeated the statement at a trial if a trial was held, and her testimony as to what Hamilton had told her likely would have been admissible as an admission of a party or a declaration against penal interest. <u>See</u> Cal. Evid. Code § 1220 ("Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party"); § 1230 (declaration against penal interest is not made inadmissible by the hearsay rule).

Hamilton's argument that the fingerprint evidence probably did not exist is sheer speculation. And it is unpersuasive speculation in light of his admission that he had driven the victim's car. <u>See</u> Petition, Exh. A, p. 13.

With each of the three planks of his actual innocence argument being so very, very weak, it is certain that he would not have been acquitted if he went to trial. Hamilton does not so much present new evidence of innocence but instead tries to whittle away at the evidence of guilt that does exist with new legal arguments. He may have buyer's remorse about a guilty plea, but that is a far cry from the kind of actual innocence showing necessary for him to pass through the actual innocence gateway.

C.    <u>No Evidentiary Hearing Or Appointment of Counsel</u>

"A habeas petitioner [] should receive an evidentiary hearing when he makes 'a good faith allegation that would, if true, entitle him to equitable tolling.'" <u>Roy v. Lampert</u>, 465 F.3d 964, 969 (9th Cir. 2006) (citation omitted). Here, Hamilton has not met the requirement for an evidentiary hearing on the untimeliness question or on the question of whether he should be allowed to avoid the statute of limitations bar based on actual innocence. Hamilton largely wants an evidentiary hearing so he can go in search of facts that might support the claims alleged in his petition. He protests that he has never had access to the "entire record" to develop the factual basis of his claims, but it is not clear how much more there is to the "record" in this case (beyond the preliminary hearing transcript, the sentencing transcript, the transcript of his confession that he already has) because he entered his no contest plea just a few months after his preliminary

United States District Court
For the Northern District of California

hearing.  But merely guessing or speculating that there might be something valuable to be found in a record is not enough to obtain an evidentiary hearing.  See Earp v. Ornoski, 431 F.3d 1158, 1167 (9th Cir. 2005); see also Rich v. Calderon, 187 F.3d 1064, 1067 (9th Cir. 1999) (habeas "was never meant to be a fishing expedition for habeas petitioners to 'explore their case in search of its existence'").  The request for an evidentiary hearing is DENIED.

Hamilton requests the appointment of counsel to represent him in this action.  A district court may appoint counsel to represent a habeas petitioner whenever "the court determines that the interests of justice so require and such person is financially unable to obtain representation." 18 U.S.C. § 3006A(a)(2)(B). The decision to appoint counsel is within the discretion of the district court.  See Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986).  Appointment is mandatory only when the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations.  See id.  Based on the materials in the court file, it does not appear that appointment of counsel is necessary in this action.  The request for appointment of counsel is DENIED.

**CONCLUSION**

Respondent's motion to dismiss is GRANTED.  (Docket # 5.)  Petitioner's motion for an evidentiary hearing is DENIED (Docket # 11.)  Petitioner's motion for appointment of counsel is DENIED.  (Docket # 8, # 10, # 11.)

The petition for writ of habeas corpus is dismissed because it was not filed before the expiration of the limitations period in 28 U.S.C. § 2244(d)(1).  The clerk will close the file.

IT IS SO ORDERED.

DATED: October 26, 2009

SUSAN ILLSTON
United States District Judge

12